**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**GIDGET E. MOORE,**

        **Plaintiff,**

                                        **Civil Action 2:16-cv-1087**
**vs.**                                     **Judge Algenon L. Marbley**
                                        **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Gidget E. Moore, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 20), and the administrative record (ECF Nos. 9 and 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.     BACKGROUND

Plaintiff protectively applied for security disability insurance benefits and supplemental security income in December 2010, asserting disability caused by Post Traumatic Stress Disorder ("PTSD"), Bipolar disorder, neck and back pain, migraines and deafness in her left ear, with an

onset date of June 16, 2010.  (R. at 279.)  An Administrative Law Judge (ALJ) denied Plaintiff's application in 2013.  (R. at 19-35.)  She appealed the ALJ's decision, which was reversed in this Court, and remanded for reconsideration.  *Moore v. Commissioner of Social Security,* Case number 2:14-cv-00455.   On remand, the Appeals Council vacated the ALJ's January 24, 2013 decision.  (R. at 1421-25.)  Following remand by the Appeals Council on February 9, 2016, Plaintiff appeared and testified at the June 21, 2016, hearing, represented by counsel.  (R. at 1387-1404, 1407.)  A vocational expert also appeared and testified at the hearing.  (R. at 1405-17.)  On July 13, 2016, ALJ Benjamin Chaykin issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 1351-72.)  On July 25, 2016, Plaintiff filed a Request for Review of Hearing Decision Order.  (R. at 1346-47.)  On September 16, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1340-45.)  Plaintiff then timely commenced the instant action.

## II.   HEARING TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff testified at the June 21, 2016, administrative hearing that her mother lived with her and that they help each other in performing household chores such as vacuuming, sweeping and mopping.  (R. at 1388-89.)  According to Plaintiff, she has to take breaks after 10 minutes because her neck, shoulders and lower back start hurting and she finds it hard to breathe.  (R. at 1390.)  She testified that she had tendonitis in her elbows and has had relief surgeries on both elbows.  (R. at 1395.)  At the time of the hearing, Plaintiff was not taking pain medication, and she noted she is trying to enter pain management treatment.  (R. at 1396.)

2

Plaintiff testified that she goes to the store with her mother once or twice a monthly. She finds it hard to go anywhere by herself because she fears that someone is after her. (R. at 1390-91.) Plaintiff attends church weekly. (R. at 1391.) According to Plaintiff, she had difficulty attending at first, but is now familiar with the other people who attend, which makes it easier for her. (R. at 1391-92.) She has one friend who visits her occasionally. (R. at 1392.) Plaintiff has a driver's license, but no vehicle. (*Id.*)

Plaintiff stated that she worked a few months in 2014 at a pizza shop with a friend she knew from church. (R. at 1393-94.) Plaintiff testified that her memory makes it difficult to work because she cannot remember what to do. (R. at 1397.) Plaintiff testified that she suffers from anxiety and panic attacks because she fears others are watching her or after her. (R. at 1399.) According to Plaintiff, she experiences daily anxiety attacks, fearing that someone can get in her house. (R. at 1400.) She also testified that depression usually keeps her in bed 1-2 days per week and she cries at least three times per week. (R. at 1401-02.)

Plaintiff testified that, during a typical day, watches television with her mom. (R. at 1402.) Sometimes her daughter visits and brings her grandson to play. (*Id.*) She gets dressed on a daily basis but showers only every couple of days. (*Id.*) She cooks and does laundry, although she stated that the laundry basket is too heavy for her to lift. (*Id.*) She reported that she could not sit or stand for long periods of time due to back pain. Plaintiff stated that she has no difficulty using her hands or arms, but she cannot do "a lot of repetitive or heavy stuff." (R. at 1402-03.) Plaintiff testified that after about 5 minutes of repetitive activities, such as folding clothes, or doing dishes, her hands go numb. (R. at 1403.)

**B.**     **Vocational Expert Testimony**

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past jobs include a test driver, auto research; a fast food worker, light in exertion and unskilled; and a housekeeper, also light in exertion, but performed at the medium exertional level, and unskilled. (R. at 1406-10.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE.  (R. at 1411-13.)  Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could not perform her past relevant work, but could perform approximately 383,000 unskilled, light exertional jobs in the national economy such as a sorter, marking clerk, and routing clerk.  (R. at 1413.)  The VE also testified that if the hypothetical individual were off task over 10% of the work day, it would be work preclusive.  (R. at 1414.)

### III.     MEDICAL RECORDS

**A.  Mental Impairments**

**1.  Consolidated Care**

Plaintiff sought mental health treatment from Consolidated Care beginning in December 2009.  (R.at 986-97.)  At that time, Plaintiff reported she was recently released from prison for helping her husband escape from prison.  While in prison, Plaintiff claimed she was diagnosed with bi-polar disorder and had previously been diagnosed with major depressive disorder and PTSD for physical and sexual abuse.  Now that she was no longer on parole, Plaintiff stated that she wants to continue her treatment for her "mood disorder."  (R. at 986.)  The intake social worker, Robert Crook, MA, LSW found upon mental status examination that Plaintiff was

agitated, depressed and anxious, but with full affect. (R. at 997.) Mr. Crook diagnosed Plaintiff with major depressive disorder, rule out bi-polar disorder and PTSD. (R. at 995.)

Plaintiff underwent her initial psychiatric evaluation with Angela Wallenbrock, M.D. on December 18, 2009. (R. at 980-83.) Dr. Wallenbrock discussed her prior medications and her onset of mood problems. Plaintiff reported that she gets anxious around groups of people especially if they're "rowdy." She also admitted to anger issues. Dr. Wallenbrock assessed dysthymia and PTSD. (R. at 982.)

According to Mr. Crook's treatment notes, Plaintiff suffers from depression, stress, anxiety, and difficulty tolerating others. Plaintiff reports being frustrated, angry, depressed, and anxious, especially when she does not take her medication or when she experiences a traumatic life event. (R. at 963, 967, 1021, 1024, 1027, 1077, 1082, 1235, 1245, 1250, 1255.) During mental status examinations, Mr. Crook found Plaintiff exhibited some depression and anger, but also found that she had logical and clear thought processes, was calm, and had normal behavior and functioning. (R. at 949, 951, 952, 955, 958, 961, 966, 969, 971, 978, 1031, 1075-76, 1080, 1091, 1092, 1094, 1234-37, 1236, 1239, 1240, 1244, 1247, 1253, 1259.)

On May 14, 2010, Dr. Wallenbrock completed a mental status questionnaire in which she listed Plaintiff's diagnoses as dysthymia and PTSD and noted that Plaintiff had articulate speech, no loose associations, appropriate mood and affect, average intelligence, and good memory. Dr. Wallenbrock did note that Plaintiff has complaints of anxiety attacks, but she also noted that Plaintiff was recently assaulted by a woman under the influence of drugs. Dr. Wallenbrock further opined that Plaintiff "may become moody" from work pressure, but that she had a good ability to remember, understand, and follow directions; maintain attention; and sustain concentration, persist at tasks, and complete tasks in a timely fashion. (R. at 965-67.)

On March 2, 2011, Dr. Wallenbrock noted Plaintiff's diagnoses of dysthymia and PTSD and found that Plaintiff's speech was clear and fluent, that she was fully oriented, had no thinking disorders, had average intelligence, and that her memory was intact. (R. at 1066.) Dr. Wallenbrock also reported that Plaintiff was tearful at times and that her mind raced, but that she had adequate insight. (*Id*.) Dr. Wallenbrock noted that loud noises trigger anxiety and Plaintiff becomes anxious in crowds; and "snaps for no reason." (R. at 1067.) Dr. Wallenbrock opined that Plaintiff may become anxious in a work setting. (*Id*.) She also opined that Plaintiff's ability to remember, understand, and follow directions; maintain attention; and sustain concentration, persist at tasks, and complete tasks in a timely fashion were good. (*Id*.)

On March 25, 2011, Plaintiff began seeing a new psychiatrist at Consolidated Care, Naomi Bloom, M.D. (R. at 1070, 1096-97.) On September 23, 2011, Dr. Bloom reported that Plaintiff had intermittent depressed mood with crying spells, and avoided people because of her depression. Dr. Bloom also found that Plaintiff becomes overstimulated easily, but is still able to focus well on one thing at a time. Plaintiff's stress tolerance was somewhat lower than average. (R. at 1070-72.)

In June 2012, Mr. Crook opined that Plaintiff had marked to extreme limitations in her ability to perform all of the social interaction, concentration, and persistence, and adaptation activities. He found Plaintiff moderately impaired in maintaining personal appearance and hygiene. He further opined that Plaintiff's anxiety level, depression, and anger outbursts would be exacerbated by the stress of a job. (R. at 1161-63.)

The records from Consolidated Care reveal that Plaintiff continued to receive counseling with Mr. Crook, met with a Community Psychiatric Supportive Treatment member for housing support and help with her SSA application, and Dr. Wallenbrock or Dr. Bloom followed her for

medication evaluation through at least February 2016. (R. at 1229-79, 2301-16.) When seen by a therapist in November 2015, Plaintiff reported that her medication is helpful and her depression stable. (R. at 2311.) By February 2016, she denied feeling anxious and reported a stable mood. She admitted to feelings of depression but no more so than she believes the situation would cause in someone else. (R. at 2314.)

### 2. Consultative Evaluations

In November 2011, George Schultz, Ph.D., examined Plaintiff for disability purposes. (R. at 1106-14.) Plaintiff reported that she suffered from PTSD and depression and that her case manager told her to apply for Social Security Disability benefits. (R. at 1107.) She stated that she spent a typical day reading and watching television and that she enjoyed drawing and crocheting as hobbies. She reported cooking, cleaning her apartment, and doing laundry on a regular basis, grocery shopping, attending appointments, using a computer, and getting along well with neighbors, store clerks, and public officials. (R. at 1109-10.) On mental status examination, Dr. Schultz found that Plaintiff was cooperative, her speech was clear and well organized, her affect was appropriate, and her mood was euthymic. (R. at 1110.) Plaintiff reported feeling depressed, but denied anxiety. (R. at 1111.) She could recall six digits forward and four digits in reverse, carry out three-step tasks, and recall three of three objects after five minutes. Plaintiff was alert and oriented in all spheres and exhibited no signs of confusion or lack of awareness. (*Id.*) Dr. Schulz diagnosed depressive and anxiety disorders. (R. at 1113.) Dr. Schultz opined that Plaintiff was capable of understanding and applying instructions in the work setting within the low average range of intellectual functioning; was capable of completing routine or repetitive tasks; could respond appropriately to coworkers and supervisors in a work

setting; and would have some difficulty responding appropriately to work pressure. (R. at 1113-14.)

Plaintiff was again evaluated for disability purposes by Regina McKinney, Psy.D., in March 2016. (R. at 2127-36.) When asked why she felt she was disabled, Plaintiff reported depression and anxiety and physical problems. (R. at 2128.) Plaintiff told Dr. McKinney that she got along well with coworkers and supervisors in the past but is anxious around crowds of people. (R. at 2129.) Dr. McKinney reported that that although Plaintiff was cooperative during the evaluation, she appeared anxious and depressed, and at times, had a downcast facial expression and at other times had an apprehensive facial expression. (R. at 2130.) Dr. McKinney opined that Plaintiff may have difficulty retaining information to complete multi-step instructions and recommended limiting her to simple, routine, and repetitive work. (R. at 2132.) According to Dr. McKinney, Plaintiff's anxiety could result in increased worry and decreased attention and concentration skills, and Plaintiff's depressive symptomatology may contribute to a slowed work pace by limiting her to work that was not at a production pace or work with strict quotas. (*Id*.) Dr. McKinney completed a separate statement in which she opined that Plaintiff had marked impairment interacting appropriately with others and responding appropriately to usual work stresses and changes in the work setting. (R. at 2135.)

### 3. State agency review

Vicki Warren, Ph.D. reviewed Plaintiff's file in July 2010. (R. at 926-43.) According to Dr. Warren, Plaintiff was mildly restricted in her activities of daily living; had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence and pace. (R. at 940.) Dr. Warren gave weight to Dr. Wallenbrock's May 2010 opinion, finding it supported by the totality of the evidence in the file. Dr. Warren also found that Plaintiff's

statements are considered mostly credible because, at the time of the filing, Plaintiff was under a great deal of stress due to her living arrangements. Since that time her life circumstances have improved and she is no longer in the same situation. She reports looking for work and doing well in her apartment. Dr. Warren concluded that Plaintiff "retains the ability to do complex routine work in a predictable environment where expectations are clear and consistent. Contact [with] others is not restricted. No production or quota requirements." (R. at 928.)

State agency psychologist, Caroline Lewin, Ph.D., reviewed the file in April 2011 and found that the record documents medical determinable impairments of affective disorder and anxiety disorder. (R. at 77.) According to Dr. Lewin, Plaintiff had moderate restrictions in her activities of daily living; and mild difficulties in maintaining social functioning and in maintaining concentration, persistence and pace. (*Id.*) Dr. Lewin found Plaintiff is capable of performing simple to moderately complex tasks where strict production quotas are not required. (R. at 79-80.)

State agency psychologist, David Dietz, Ph.D., reviewed the file at the reconsideration level in November 2011 and determined that Plaintiff had mild restrictions in her activities of daily living and in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence and pace. (R. at 118.) Dr. Deitz considered Dr. Bloom's September 2011 opinion and gave the opinion weight, except in the area of attention and concentration. Dr. Deitz noted that even though Dr. Bloom opined that Plaintiff can focus on only one thing at a time, she displayed a more moderate impairment at the consultative examination with Dr. Schultz, which she also demonstrated by her ability to perform various chores and care for herself on a daily basis. (R. at 120.)

**B. Physical Impairments**

**1. Treatment**

Plaintiff treated with Mohamed H. Hamaza, M.D., and Winfred Stoltzfus, M.D., at Mad River Internal Medicine for depression, anxiety, back and joint pain, headaches, and asthma. The record contains treatment notes beginning in January 2010 through at least March 2016. (R. at 845-53, 1044-65, 1280-1339, 1797-2089, 2143-2299.) Plaintiff also treated with Rhonda Thompson, CNP, from Mary Rutan Physician Practice who found back pain, decreased mobility, joint pain, joint swelling, and joint tenderness in September 2012. (R. at 1217.)

On October 29, 2015, Plaintiff treated at the emergency room at Mary Rutan Hospital for left lower lumbar back pain radiating into the left lower extremity. Lumbar spine x-rays demonstrated L4-L5 degenerative disk disease but no fracture. (R. at 2038-43.) She was seen again on November 6, 2015, and given a brief course of oxycodone. (R. at 2032-36.) On November 9, 2015, she underwent CT scan of the lumbar spine , which showed L5-S1 degenerative disk disease with a mild herniation approaching the nerve root, but, otherwise, no acute findings. As treatment, she received a course of corticosteroids. (R. at 2018-27.) Plaintiff returned on November 21, 2015, due to continued discomfort, identical in nature and character, and she received additional medication. (R. at 2006-11.)

She returned to the ER on December 15, 2015, with back pain, noting her primary care physician would not prescribe any more pain mediation and that she had an appointment with a pain physician in April. (R. at 1966.)

Plaintiff underwent a cervical spine x-ray taken on May 1, 2012, which showed mild disc space narrowing at the C7-T1 level. (R. at 337.) An MRI of the cervical spine taken on May 28,

2012, showed no abnormalities.  (R. at 336.)  A left lower EMG study taken in January 20, 2016, was normal.  (R. at 2096-97.)

### 2. Consultative Examination

Plaintiff was examined on November 17, 2011 by Rohn Kennington, M.D. for disability purposes.  (R. at 1117-23.)  Plaintiff's chief complaints were mental health issues, chronic neck and back pain, migraine headaches, and deafness in her left ear.  (R. at 1117.)  Plaintiff reported that if she is on her feet a lot or does a lot of heavy lifting or work, she experiences pain in her neck and lower back, as well as her left shoulder.  (*Id*.)  At the time of this examination, she was receiving physical therapy for her left shoulder.  She also took Gabapentin and Vicodin on an as needed basis.  (*Id*.)  On examination, Plaintiff exhibited a normal gait, sensation, reflexes, and muscle strength.  (R. at 1118.)  Her grip strength was diminished; however, Dr. Kennington reported that Plaintiff did not appear to give full effort on that testing.  (R. at 1120.)  Straight leg raise testing was negative to 45 degrees and motor function was normal.  Dr. Kennington found tenderness to palpation over the left shoulder and a painful range of motion.  (R. at 1118, 1120-23.)  Plaintiff's cranial nerves were intact, except for the deafness in her left ear.  (R. at 1119.)  Dr. Kennington diagnosed Plaintiff with deafness in the ear, chronic neck and lower back pain, migraine headaches, and various mental health issues.  (*Id*.)  Dr. Kennington concluded that, based on his examination, Plaintiff's "[s]itting, standing, and walking would need to be limited to brief periods of time of no more than 1 hour at a time with adequate periods allowed for rest and change of position in light of her chronic back and shoulder issues."  (*Id*.)

### 3. State Agency Review

Myung Cho, M.D., reviewed Plaintiff's medical record on June 1, 2010, and determined Plaintiff was capable of medium exertional work.  (R. at 919.)  Dr. Cho found Plaintiff would

11

have the environmental limitations of avoiding concentrated exposure to fumes, odors, dusts, and

gases, and avoiding even moderate exposure to noise. (R. at 922.)

Leanne M. Bertani, M.D., reviewed Plaintiff's medical record in April 2011 and

determined that Plaintiff's current combination of physical impairments is not expected to limit

functioning more than a mild degree. (R. at 76-77.)

Nick Albert, M.D., reviewed Plaintiff's medical record upon reconsideration in

November 2011 and affirmed Dr. Bertani's assessment. (R. at 124.)

## IV.  THE ADMINISTRATIVE DECISION

On July 13, 2016, the ALJ issued his decision. (R. at 1351-72.)  Plaintiff met the insured

status requirements through June 30, 2013.  At step one of the sequential evaluation process,[1] the

ALJ found that Plaintiff had not engaged in substantially gainful activity since June 16, 2010, the

alleged onset date. (R. at 1353.)  The ALJ found that Plaintiff had the severe impairments of

lumbar spine degenerative disc disease, chronic neck pain, migraines, asthma, and anxiety and

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or
    equal the criteria of an impairment set forth in the Commissioner's Listing of
    Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant
    perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual
    functional capacity, can the claimant perform other work available in the national
    economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

affective disorders. (*Id.*) The ALJ determined that Plaintiff's hearing loss and bilateral lateral epicondylitis are not severe impairments. (R. at 1355.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1356.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), subject to the following limitations: (1) no climbing of ropes, scaffolds or ladders; (2) occasional climbing of ramps or stairs; (3) occasional stooping, crouching, balancing, kneeling, crawling; (4) no overhead reaching and frequent reaching in all other directions; (5) exposure to no more than moderate noise; (6) no concentrated exposure to dusts, odors, fumes or other pulmonary irritants; (7) no exposure to dangerous hazards such as unprotected heights or dangerous machinery; (8) limited to performing simple, routine and repetitive tasks but not at a production rate pace or strict quota; (9) limited to simple instructions and simple work related decisions; (10) occasional interaction with supervisors and coworkers and no interaction with the public; (11) limited to a static work environment, with few changes in the work setting and no teamwork or tandem tasks.

(R. at 1363.) In reaching this determination, the ALJ assigned "significant adjudicative weight" to the opinions of the state agency reviewing psychologists, Drs. Warren, Lewin and Deitz, noting "[t]his claim was remanded because the prior Decision accorded significant weight to those opinions, but did not include any limitations related to decreased stress tolerance, which were included in those opinions. However, as set forth above, additional restrictions consistent with those opinions are supported . . . ." (R. at 1369.) The ALJ found the opinions of Drs. Wallenbrock and Bloom generally entitled to significant weight. (*Id.*) The ALJ assigned Mr. Crook's opinion "minimal weight" noting that he is not an acceptable medical source whose opinion is entitled to any special deference. (R. at 1370 (citing SSR 06-3p).) The ALJ considered Mr. Crook's opinion of extreme limitations inconsistent with the weight of the

clinical evidence of record and other medical source opinions.  (*Id.*)  The ALJ explained that Mr. Crook's assessment is more consistent with a person requiring inpatient hospitalization for stabilization of symptoms.  (R. at 1370.)   In addition, the ALJ found Mr. Crook's assessment appeared to exceed even Plaintiff's allegations.  (*Id.*)

The ALJ assigned "some weight" to Dr. Schulz's opinion as Plaintiff is somewhat more limited from a mental standpoint than he set forth.  (R. at 1370.)  The ALJ assigned "moderate weight" to Dr. McKinney's assessment and stated that her opined limitations are accounted for in the RFC to the extent that they are otherwise supported in the record.  (R. at 1370-71.)

With respect to Dr. Kennington's opinion, the ALJ found that objective and clinical findings did not support his exertional limitations given that he only noted minimal abnormalities on examination, which suggests Dr. Kennington's findings are based solely on Plaintiff's subjective claims.  (R. at 1369-70.)  The ALJ rejected the state agency review of Drs. Cho, Bertani, and Albert because they indicate that Plaintiff does not suffer from a severe physical impairment, even though the record confirms that she has several physical impairments that are severe and require functional restrictions.  (R. at 1369.)

Relying on the VE's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy.  (R. at 1371-72.)  He, therefore, concluded that Plaintiff is not disabled under the Social Security Act.  (R at 1372.)

## VII.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.  2007)).

## VIII.  ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ failed to follow the instructions set forth in this Court's previous Opinion.   Specifically, Plaintiff argues that the ALJ's mental

RFC determination inadequately accounts for Plaintiff's limitations in maintaining concentration, persistence and pace and fails to address the opinions of state agency psychologist, Dr. Warren. (ECF No. 13 at 11-13.)  Plaintiff also argues that the ALJ failed to account for the limitations identified by consulting examiner, Dr. Regina McKinney.  (*Id*. at 14-18.)  Last, Plaintiff argues that, in his physical RFC determination, the ALJ erroneously discounted Dr. Kennington's opinion and found that Plaintiff is capable of performing the sitting, standing, and walking associated with light work.  (*Id*. at 18-21.)

Defendant responds that the ALJ, on remand, more than adequately addressed this Court's concerns in conveying Plaintiff's limitations in maintaining concentration, persistence and pace.  (ECF No. 19 at 10.)  Defendant also argues that the ALJ directly incorporated Dr. Warren's findings, insofar as they are supported by evidence in the record, into his RFC determination.  (*Id*.)  Defendant further argues that the ALJ accounted for the limitations set forth by Dr. McKinney to the extent they were consistent with other evidence in the record.  (*Id*. at 11.)  Finally, Defendant argues that the record supports the ALJ's physical RFC and that Dr. Kennington's findings are internally inconsistent and conflict with the objective and clinical findings of other medical sources.  (*Id*. at 17.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the

temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

## A. The ALJ's Mental RFC Determination is Supported by Substantial Evidence

### 1. Concentration, persistence, and pace.

Plaintiff maintains that, in determining Plaintiff's mental RFC, the ALJ failed to heed this Court's instructions to account for Plaintiff's moderate limitations in concentration, persistence, and pace with more than merely "limiting jobs to simple, repetitive tasks." *Moore*, 2015 WL 5675805, at *6 (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)). Plaintiff also maintains that the ALJ failed to adequately address Dr. Warren's opinion testimony as directed by this Court. *See Id.* at *7 n. 4.

The ALJ set forth Plaintiff's mental RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), subject to the following limitations: . . . (8) limited to performing simple, routine and repetitive tasks but not at a production rate pace or strict quota; (9) limited to simple instructions and simple work related decisions; (10) occasional interaction with supervisors and coworkers and no interaction with the public; (11) limited to a static work environment, with few changes in the work setting and no teamwork or tandem tasks.

(R. at 1363.)  Plaintiff's original mental RFC, which this Court found inadequate, did not include any of the limitations now found in (9) – (11) and included the ability to perform "production-oriented . . . work."[2]  (R. at 27.)

The ALJ specifically cited Dr. McKinney's assessment as supporting the additional "restrictions against production rate pace or strict quota work, as well as reduced personal contact in the work place, including no teamwork or tandem tasks, and the limitations to a static work environment."  (R. at 1367.)  The ALJ further noted that evidence supplied by Plaintiff's psychiatrists support the removal of "a significant amount of stressors from the work environment," as reflected in the ALJ's RFC.  (*Id.*)  The ALJ's RFC determination reflects Dr. Warren's opinion evidence that Plaintiff "retains the ability to do complex routine work in a predictable environment where expectations are clear and consistent. . . .  No production or quota requirements."  (R. at 928.)  Moreover, the ALJ's RFC is in some respects more restrictive than Dr. Warren's findings, which included no limitations on interaction with others in the workplace. (*Id.*)  In sum, the ALJ properly considered this Court's Order and his conclusions regarding Plaintiff's limitations for concentration, persistence, and pace are supported by substantial evidence.

---

[2] The original RFC limited Plaintiff to "no more than occasional interaction with the public; no more than simple, repetitive tasks performed with the need for only regularly scheduled breaks and with the ability for either production-oriented or goal-oriented work."  (R. at 27.)

## 2. Dr. McKinney's opinion evidence

Plaintiff posits that, in determining her mental RFC, the ALJ failed to account for the limitations identified by consulting examiner, Dr. Regina McKinney, and erroneously found that Plaintiff is capable of performing the sitting, standing, and walking associated with light work. (*Id*. at 13-21.)

Plaintiff states that the ALJ failed to account for the significant limitations identified by Dr. McKinney. (ECF No. 13.) Plaintiff lists several such findings, including Plaintiff's "marginally adequate" remote recall skills and weak short-term memory skills, which "suggests that she may have difficulty retaining information to complete multi-step instructions." (R. at 2132; *see* R. at 2134.) Dr. McKinney also noted that Plaintiff's "[a]nxiety could result in increased worry and corresponding decreased attention and concentration skills, while depressive symptomatology may contribute to a slowed work pace." (R. at 2132.) Plaintiff reported that, although she felt anxiety around others, she "got along well with co-workers and supervisors." (R. at 2132.) Dr. McKinney observed that the everyday stress of work and supervisor criticism could increase Plaintiff's anxiety and slow her work performance. (*Id.*; R. at 2135.)

In his opinion, the ALJ accorded Dr. McKinney's opinion moderate weight and accepted some findings, while rejecting others. (R. at 1370-1371.) In so doing, the ALJ clearly stated that he was rejecting a portion of Dr. McKinney's opinion because it is not supported by the medical evidence—which the ALJ set forth in great detail throughout his opinion. The ALJ explained that he rejected some of Dr. McKinney's limitations because her findings were "vague" and couched in probabilistic terms like "may" and "could." (R. at 1370.) Furthermore, as the ALJ points out, Dr. McKinney's observations and conclusions conflict with other evidence in the record, including prior consultative evaluations and treatment notes from Plaintiff's treating

19

sources at Consolidated Care. (R. at 1371) The record reflects that Dr. Wallenbrock found Plaintiff to have average intelligence and a good memory, as well as the ability to remember, understand, and follow directions; maintain attention; and, sustain concentration, persist at tasks, and complete tasks in a timely fashion. (R. at 965-967; 1066-1068.) The record also reflects that Plaintiff considered her depression stable and that she experiences no more feelings of depression than someone else in the same situation would feel. (R. at 2311, 2314.)

It is appropriate to point out that the ALJ in this case confronted no easy task. Presented with several different, and at times contradictory, opinions from a number of different professionals with different specialties, the ALJ had to rely on reports from doctors who had widely varying treating relationships with Plaintiff. In reaching his decision, the ALJ reviewed the various opinions, reports, and diagnostic results. Based on his review of the record, he chose to afford less weight to the opinions of Dr. McKinney than others. Given the number of doctors that examined Plaintiff and the variation in their opinions, almost any decision that the ALJ could have rendered would have required him to discredit the opinion of at least one medical source. The ALJ thoroughly discussed his reasons for accepting certain opinions and rejecting a portion of Dr. McKinney's. It is not error to do so when, as explained above, the record contains ample support for the opinions the ALJ accepts. *Mullins v. Sect'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987).

For the reasons explained above, the Undersigned finds that, on remand, the ALJ properly accounted for Plaintiff's limitations in his mental RFC determination and that determination is supported by substantial evidence in the record.

**B. The ALJ's Physical RFC Determination is Supported by Substantial Evidence**

Plaintiff maintains that, in his physical RFC determination, the ALJ erred by discounting Dr. Kennington's findings and determining that Plaintiff is capable of performing the sitting, standing, and walking associated with light work.  (*Id*. at 18-21.)  Specifically, Plaintiff argues that the ALJ did not properly account for the residual effect of her neck pain and lumbar degenerative disc disease in formulating her physical RFC.  (*Id*. at 19.)  Plaintiff also argues that the ALJ improperly discounted Dr. Kennington's opinion of Plaintiff's ability to sit, stand, or walk as required by "light work."  (*Id*.at 20.)

The regulations defining "light work" read, in pertinent part, as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).  A job may be considered light work if it includes no more than six hours of standing or walking in an eight-hour workday.  SSR 83-10.

In his opinion, the ALJ noted Dr. Kennington's findings and accorded them minimal weight based on their inconsistency with other evidence in the record and with Dr. Kennington's own clinical examination.  (R. at 1369.)  Dr. Kennington observed "tenderness and palpation over the left should and painful range of motion, otherwise there is normal range of motion."  (R. at 1118.)  Dr. Kennington recorded no other abnormalities related to Plaintiff's shoulder or back pain, which he opined would, nevertheless, limit Plaintiff's ability to sit, stand, or walk "to brief periods of time no more than 1 hour at a time with adequate periods allowed for rest and change of position."  (*Id*.at 20; R. at 1119.)

As the ALJ points out in his opinion, objective medical tests in the record, including x-rays showing only mild disc space narrowing, an MRI showing no abnormalities, and a lower EMG study that was normal, directly contradict Dr. Kennington's findings. (R. at 337, 336, & 2092.) Moreover, Dr. Kennington himself observed, "Claimant ambulates without difficulty." (R. at 1118.)

In light of the lack of objective evidence supporting the opined limitations, the ALJ properly concluded that Dr. Kennington's opinions were based primarily on plaintiff's subjective complaints. (R. at 1369.) *See Walton v. Comm'r of Soc. Sec.*, 60 F.App'x 603, 612 (6th Cir. 2003) (magistrate judge reasonably inferred that doctor's opinion was based on plaintiff's subjective complaints where opinion was unsupported by objective medical findings). Subjective claims of disabling pain must be supported by objective medical evidence in order to serve as a basis of a finding of disability. *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). Because the ALJ concluded that Dr. Kennington's opinions concerning plaintiff's physical limitations are not supported by objective evidence in the record, the ALJ's decision to give those opinions minimal weight is supported by substantial evidence. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273–74 (6th Cir. 2010) (concluding that the ALJ did not err in rejecting a medical opinion based on the claimant's subjective complaints which were not supported by objective medical evidence); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (ALJ's rejection of doctors' opinions was supported by substantial evidence where doctors formed their opinions solely from claimant's reporting of her symptoms and conditions, and the ALJ found that claimant was not credible); *Crofutt v. Comm'r of Soc. Sec.*, No. 2:13–cv–706, 2015 WL 964113 at *15 (S.D. Ohio March 4, 2015) (ALJ did not err in discounting doctor's

opinion based in part on plaintiff's subjective complaints of pain which were not well-supported by objective record).

For the reasons explained above, the Undersigned finds that, on remand, the ALJ accorded Dr. Kennington's opinion evidence proper weight. The Undersigned also finds that the ALJ adequately accounted for Plaintiff's limitations in his physical RFC determination and that determination is supported by substantial evidence in the record.

## IX. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned finds that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## X. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation). Even when timely objections are filed, appellate

review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the

issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: November 28, 2017                    _/s/ Elizabeth A. Preston Deavers_
                                           ELIZABETH A. PRESTON DEAVERS
                                           UNITED STATES MAGISTRATE JUDGE